DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that terminated the parental rights of appellants Melinda F. and Ronald H., parents of Malaya, Monica and Romael H. For the following reasons, the judgment of the trial court is affirmed.
 {¶ 2} Appellants set forth three assignments of error:
 {¶ 3} "I. The trial court erred in finding that the minor child herein Monica was a neglected and abused child and that Romael was a dependent and neglected child in that hearsay testimony was improperly admitted into evidence over objection at the hearing hereof and that such findings are against the manifest weight of the evidence.
 {¶ 4} "II. The trial court erred in finding that the Lucas County Children Services Board had made a reasonable effort to reunify the minor children with appellants.
 {¶ 5} "III. The trial court erred in granting Lucas County Children Services Board's motion for permanent custody as such decision was against the manifest weight of the evidence."
 {¶ 6} The undisputed facts relevant to the issues raised on appeal are as follows. Appellants have been involved with Lucas County Children Services ("LCCS") since 1996. Concerns originally arose due to domestic violence between appellants mother and father and questions about whether the basic needs of the children were being met due to father's substance abuse and mother's mental health issues. The family's initial contact with the agency occurred in August 2000, when a complaint in dependency and neglect was filed with regard to Monica, born August 13, 1997, and an older sibling, Ronald.[1] Monica and Ronald were adjudicated dependent and neglected children and on September 20, 2000, legal custody was awarded to mother. The trial court found that father had refused services and denied any problems, while mother had participated only minimally in services. LCCS was awarded protective supervision. Father was ordered to have no contact with the children. The agency developed a case plan which called for diagnostic assessment, parenting classes and domestic violence services for both parents, as well as substance abuse assessment and counseling for father. On May 16, 2001, Romael, who was born on October 15, 2000, was found to be a dependent and neglected child. The agency also filed a motion to change disposition in regard to Monica and Ronald. On January 7, 2002, legal custody of Ronald and Romael was awarded to their maternal grandmother, Elaine F., and legal custody of Monica was awarded to her aunt. Monica was later placed in her grandmother's care. Malaya was born on April 12, 2002, and by agreement of the parents was adjudicated a dependent child. Temporary custody of Malaya was awarded to LCCS. Services continued to be offered to both parents.
 {¶ 7} On April 30, 2004, the agency filed a motion for permanent custody as to Malaya. Malaya had been in the temporary custody of LCCS for two years. The agency alleged that it had provided mother with a case plan addressing the need for parenting classes, mental health services and anger management in order to enable her to be reunified with Malaya. Appellant mother had failed to incorporate parenting behavior concepts from the services in which she had been involved and had failed to find suitable housing. Appellant father failed to participate in services, had an extensive criminal record, and had been incarcerated for violent crimes. Maternal grandmother had informed the agency she was unable to care for Monica and Romael.
 {¶ 8} On June 4, 2004, LCCS filed a "Complaint in Dependency, Neglect and Abuse: Permanent Custody and Motion for Shelter Care Hearing" with regard to Monica and Romael. In this complaint, the agency alleged that the children's grandmother, who had custody of Monica and Romael, admitted violating the safety plan by allowing mother to move into her home and assume responsibility for the children's care. Mother had whipped Monica with a coat hanger, leaving marks on the child's arms and leg, and continued to associate with father, despite their history of domestic violence and his history of substance abuse.
 {¶ 9} On August 31, 2004, the matter proceeded to adjudication as to Monica and Romael. LCCS presented the testimony of Sandra Murphy, Monica's kindergarten teacher. Murphy testified that Monica claimed her mother had hit her with a clothes hanger and showed the teacher a mark on her arm. Barbara Duffy, the school nurse, testified that Murphy brought Monica to see her that day. Duffy saw a two-inch red mark on Monica's arm and a six-inch mark on her leg which Monica said were from a "whipping." Bonnie Swiderski, a registered nurse with LCCS, testified that she examined Monica in the agency's clinic and observed two linear marks on her arm. When asked how she got the marks, Monica told Swiderski her mother hit her with a hanger. Elaine F., the children's grandmother, testified that when Monica and Romael were in her custody mother visited the children often and stayed overnight a few times. Elaine testified she did not believe mother would harm her children. She further testified mother had unsupervised contact with the children on several occasions. She stated mother did not want to be involved with father in the future.
 {¶ 10} Wanda Cannon, a caseworker, testified she became involved with the family in 2002. She stated the children's safety plan required mother's visits with the children to be supervised. Her initial concerns with the children involved poor hygiene and Monica's unacceptable behavior which led to her leaving school. Neither mother nor father presented witnesses in this phase of the proceedings. Following adjudication, the trial court found LCCS had presented clear and convincing evidence to support a finding of abuse and neglect as to Monica and neglect and dependency as to Romael.
 {¶ 11} The matter proceeded directly to disposition as to all three children. LCCS presented the testimony of Kelly Mirable, a parenting educator with LCCS. Mother attended her 12-week program in 2001. Mother attended the class regularly but did not successfully complete the program. Mirable testified that mother successfully completed only four of the eleven assignments. As part of the program, Mirable made ten home visits. She stated mother's interaction with the children was limited and mother appeared rigid when she was with them. Mother did not appear to be applying the concepts taught in the program. Mirable spoke to mother about her concerns and made suggestions but did not see any improvement. At the conclusion of the program, Mirable recommended that mother receive a psychological evaluation due to her concern that mother did not understand some of the concepts discussed in the class.
 {¶ 12} Charlene Cassel, chief psychologist at Harbor Behavioral Health Care, testified as to her evaluation of mother in May 2001. She found mother to be functioning in the borderline range of intelligence with a full scale IQ of 72. She also found mother to have borderline personality disorder. She noted the following: a tendency to convert psychological concerns into physical complaints, a failure to accept responsibility for anything that happened to her or her children, poor judgment in terms of associations with her boyfriend, and a complete denial of domestic violence in her relationship with father. She also noted mother seemed to downplay concerns about raising her children. This included her son Ronald's diagnosis of Down's Syndrome and the developmental delays experienced by Romael. She further stated the parenting class may have been inappropriate for mother due to her difficulty with "book learning."
 {¶ 13} Wanda Cannon again testified for LCCS. She stated that when the agency first became involved with the family in 1997, the major concern was domestic violence between mother and father. She added that domestic violence remained a serious concern. Other issues were neglect, a lack of parenting skills, the need for substance abuse services for father, and mental health services for mother. When Romael was born in 2000, domestic violence remained an issue, along with father's lack of compliance with a no-contact order and mother's compliance with the case plan and utilizing what she had been taught. When Malaya was born in 2002, the issues remained the same. Because the other siblings were in the custody of LCCS, legal custody of Malaya was immediately awarded to the agency. The case plan included victims treatment and parenting classes for mother, substance abuse and offenders treatment for father, domestic violence and anger management services for both parents, and other counseling as needed. Cannon testified that mother participated in four different parenting classes. Mother enrolled in the fourth class so that the agency could better assess her parenting capabilities.
 {¶ 14} Cannon further testified she has seen indications that mother has not learned to identify appropriate child behavior or use age-appropriate discipline. Cannon referred to the substantiated abuse of Monica and stated when she discussed it with mother, she denied the incident. She testified mother has indicated she intended to remain with father. Cannon described a phone call from mother, several months before the hearing. Mother yelled and screamed obscenities, declaring she would continue to be with father, loved him and did not care what the agency thought. Shortly after that, mother appeared at the agency with father and again told Cannon she planned to be with him. These conversations took place after mother obtained a civil protection order against father. Cannon stated she witnessed mother lose control when she becomes angry, "almost like a blind anger." She has witnessed similar outbursts from father. Cannon described Monica as an angry child who is attending counseling. Both Monica and Romael are adjusting very well to the foster home where they were placed together. Malaya is in a separate foster home and is doing well. Cannon has not seen any changes or improvement in mother's ability to parent her children since becoming involved with the family. Cannon recommended permanent custody of the three children to LCCS for purposes of adoption.
 {¶ 15} Neither parent presented evidence at the dispositional phase of the proceedings.
 {¶ 16} By judgment entry filed December 14, 2004, the trial court made the following findings as to adjudication. On March 12, 2004, Monica was whipped with a coat hanger and said her mother was the one who struck her. Also on March 12, 2004, the children's grandmother stated she was overwhelmed by caring for the children and asked LCCS to remove them from her home. On several occasions, grandmother allowed mother to have unsupervised contact with the children, contrary to the safety plan LCCS had implemented with grandmother. Grandmother had no explanation as to how Monica received the injuries the child said came from being hit with the hanger. The trial court found Monica to be a neglected and abused child and Romael to be a dependent and neglected child.
 {¶ 17} As to disposition, upon consideration of the testimony and other matters of record, the trial court found that LCCS made reasonable efforts to prevent the need for the removal of the children but such efforts were unsuccessful. The conditions that caused the initial removal of the children from the home have not been remedied and they cannot be returned home. Despite taking several parenting classes, mother lacks appropriate parenting skills. Mother also declared her intention to continue her relationship with father regardless of the consequences. Further, mother was diagnosed with a personality disorder with a guarded prognosis for change and functions with a borderline intellect. The trial court found that father has a criminal history that includes violent crimes and refuses to participate in case plan services. Additionally, father has provided no care or support for the children. The trial court also found that the parents have had a domestically violent relationship and have demonstrated a lack of commitment toward the children.
 {¶ 18} The court further found that there was clear and convincing evidence the children could not and should not be placed with either parent within a reasonable period of time, and that an award of permanent custody to LCCS was in their best interest. It is from that judgment that appellants appeal.
 {¶ 19} Appellants' first assignment of error contains two arguments, both of which relate to the adjudication phase. First, appellants assert the trial court erred by allowing Monica's teacher to testify that Monica claimed her mother struck her with the hanger. Appellants assert the testimony was hearsay. We do not disagree with appellants' classification of the testimony as hearsay. However, we find that the testimony was permissible under Evid.R. 803(3) as a statement of the declarant's then existing physical condition. We note that Monica's explanation to her teacher and the school nurse was consistent with, and supported, the conclusion they reached after observing the marks on her body. Further, the trier of fact is in the best position to evaluate a witness's credibility. See State v. Smith (1997),80 Ohio St.3d 89, 105. The trial court in this case found the teacher to be a credible witness and we will not second guess the court's determination. Accordingly, this argument is without merit.
 {¶ 20} Appellants also argue under this assignment of error that the trial court's findings as to Monica and Romael were not supported by the record. The trial court found that Monica was abused and neglected. Pursuant to R.C. 2151.031(D), an abused child includes any child who "[b]ecause of the acts of his parents, guardian, or custodian, suffers physical or mentalinjury that harms or threatens to harm the child's health or welfare." (Emphasis added.) At adjudication, the trial court heard the testimony of Monica's teacher and the school nurse that Monica told them her mother hit her with a hanger. Based on the testimony presented, the trial court's finding that Monica was an abused child was supported by the evidence.
 {¶ 21} The trial court also found Monica and Romael to be neglected children. R.C. 2151.03 in relevant part defines a neglected child as one "[w]ho lacks adequate parental care
because of the faults or habits of the child's parents, guardian, or custodian;". (Emphasis added.) The record includes testimony that father provided no support and refused to participate in services, mother lacks adequate parenting skills, and mother insists on continuing in a physically abusive relationship. We therefore find the trial court's determination that Monica and Romael were neglected children was supported by the evidence. Lastly, appellants assert the trial court's finding that Romael is a dependent child was not supported by the evidence. R.C.2151.04 defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;". Again, based on testimony regarding both parents and the children's custodial history with their grandmother, we find that the evidence supported a finding that Romael was a dependent child. Accordingly, appellants' first assignment of error is not well-taken.
 {¶ 22} In their second assignment of error, appellants assert the trial court erred by finding that LCCS had made a reasonable effort to reunify the children with their parents. Appellants' only argument in support of this claim seems to be that the agency should have evaluated mother to determine her reading ability and taken that into account with regard to services offered. The record does reflect that mother is intellectually low functioning. However, one of her parenting educators testified mother read aloud several times during the parenting class and that she never asked for help with reading or completing written work. Further, the record contains many examples of the agency's efforts directed toward reunification. The record shows the agency developed a case plan as to each child designed to help mother and father deal with the issues of domestic violence, substance abuse, anger management and a lack of parenting skills. The caseworkers and parenting educator had regular contact with the family and visitations were arranged with the children. Based on the foregoing, we find that LCCS made reasonable efforts to reunify mother with her children and, accordingly, appellants' second assignment of error is not well-taken.
 {¶ 23} In their third assignment of error, appellants assert the trial court's decision to grant permanent custody to the agency was not supported by clear and convincing evidence. Mother argues she consistently maintained contact with her children and engaged in the services provided to her, demonstrating her commitment to the children.
 {¶ 24} In granting a motion for permanent custody, the trial court must find that one or more of the conditions listed in R.C.2151.414(E) exist as to each of the child's parents. If, after considering all relevant evidence, the court determines by clear and convincing evidence that one or more of the conditions exists, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1). Further, pursuant to R.C. 2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to the case including, but not limited to, those set forth in paragraphs (1)-(5) of subsection (D). Only if these findings are supported by clear and convincing evidence can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. In re William S. (1996),75 Ohio St.3d 95. Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 25} This court has thoroughly reviewed the record of proceedings in this case. The record shows that father was incarcerated much of the time the agency was involved with the family and did not follow through with any case plan services. Mother completed services, but her parenting educator and caseworker testified she was not able to implement the concepts taught in parenting class. Shortly before the final hearing, mother insisted she planned to remain with father, despite a history of domestic violence, regardless of what the agency thought. Mother also allowed father to violate the civil protection order issued against him and had unsupervised contact with her children contrary to court orders. Further, the psychologist who evaluated mother noted she downplayed any of the concerns raised over her parenting skills and showed little insight into her situation. The trial court indicated its decision was based on the existence of factors set forth in R.C.2151.414(E)(1), (2), (4), (13), and (14).
 {¶ 26} Based on our review of the record, we find that the trial court's decision was supported by clear and convincing evidence and that the trial court did not err by terminating appellants' parental rights as to Malaya, Monica and Romael. Accordingly, appellants' third assignment of error is not well-taken.
 {¶ 27} On consideration whereof, this court finds that substantial justice was done the parties complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Pietrykowski, J. Parish, J. concur.
[1] Ronald Jr., Melinda and Ronald's oldest child, is not a subject of this appeal. Ronald has been in the legal custody of another individual for several years.